**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | |
|---|---|
| JAMES S., a minor, by THELMA S.<br>his Mother and Natural Guardian,<br>     Plaintiffs,<br><br>vs.<br><br>SCHOOL DISTRICT OF PHILADELPHIA,<br>HARRY J. GAFFNEY, Regional<br>Superintendent for the Southwest Region<br>of the School District of Philadelphia,<br>in his individual capacity; FRANKLIN<br>GANTZ, Principal for Tilden Middle<br>School, in his individual capacity;<br>MICHAEL SMITH, Principal for the<br>Pepper Middle School, in his individual<br>capacity; and RICHARD JENKINS,<br>Assistant Principal for the Pepper Middle<br>School, in his individual capacity,<br>     Defendants. | :<br>:<br>:<br>:<br>:     NO.  07-1778<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

---

DuBois, J.                                              June 10, 2008


**TABLE OF CONTENTS**

MEMORANDUM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.     FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        A.      Plaintiffs' Allegations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        B.      Administrative Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

III.    LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
        A.      Federal Rule of Civil Procedure 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . 14
        B.      Federal Rule of Civil Procedure 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . 15
        C.      Federal Rule of Civil Procedure 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

IV.   DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
      A.    Overview of the Individuals with Disabilities Education Act . . . . . . . . . . . . . . . 16
      B.    Administrative Exhaustion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
            1.    Count I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
            2.    Count VII . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
            3.    Counts II and III . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
                  a.    Defendant District's Motion to Dismiss . . . . . . . . . . . . . . . . . . 26
                  b.    Plaintiffs' Motion for Summary Judgment as to Count II . . . . . . 29
      C.    Count IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
            1.    Section 504 Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
            2.    ADA Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
      D.    Count V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
      E.    Count VI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
            1.    Defendant Franklin Gantz . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
                  a.    Denial of Equal Protection Based on Race . . . . . . . . . . . . . . . . 39
                  b.    Denial of Equal Protection Based on Disability . . . . . . . . . . . . 40
            2.    Defendants Michael Smith and Richard Jenkins . . . . . . . . . . . . . . . . . 42
                  a.    Denial of Equal Protection Based on Race . . . . . . . . . . . . . . . . 43
                  b.    Denial of Equal Protection Based on Disability . . . . . . . . . . . . 44
            3.    Defendant Harry J. Gaffney . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
      F.    Count VIII . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46
            1.    Prevailing Party . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46
            2.    Statutory Prohibition on Awarding Fees in 20 U.S.C. § 1415(i)(3)(D) . . 48
      G.    Paragraph 203 of the Amended Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . 52
      H.    Leave to File Second Amended Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . 53

V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

O R D E R . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

**MEMORANDUM**

I.    **INTRODUCTION**

On May 2, 2007, James S., by his mother and natural guardian, Thelma S.[1] (collectively

referred to as "plaintiffs"), filed a Complaint naming as defendants the School District of

Philadelphia ("District"), and four employees of the District in their individual capacities, Harry

J. Gaffney, Regional Superintendent for the Southwest Region of the District, Franklin Gantz,

Principal for Tilden Middle School, Michael Smith, Principal for Pepper Middle School, and

Richard Jenkins, Assistant Principal for Pepper Middle School.  On June 14, 2007, plaintiffs

filed an Amended Complaint against the same five defendants asserting claims under the

Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq. (Counts I, III, VII

and VIII), Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794 et seq.

(Counts II, III and IV), the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.

(Counts II and IV), Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d et

seq. (Count V), and 42 U.S.C. § 1983 (Count VI).  Plaintiffs seek injunctive relief, compensatory

education, compensatory damages and punitive damages for defendants' alleged failure to

provide James with a free appropriate public education ("FAPE") and discrimination against

James on the basis of his race and disabilities.

Presently before the Court is Defendant Philadelphia School District's Motion to Dismiss

Counts I, II, III, IV, V, VII and VIII of the Amended Complaint, Defendant Gaffney's Motion to

Dismiss Count VI, and Defendants Gantz, Smith and Jenkins' Motion to Dismiss Count VI.

---

[1] Thelma S. is James S.'s biological grandmother and adoptive mother.  (Hr'g Officer's
Op. 1, Feb. 3, 2007; Am. Compl. ¶ 29.)

Included in Plaintiffs' Response to Defendant Philadelphia School District's Motion to Dismiss is Plaintiffs' Motion for Summary Judgment as to Counts I, II, and VIII of the Amended Complaint.

The Court's rulings on the pending motions are as follows:

The Court grants in part and denies in part Defendant Philadelphia School District's Motion to Dismiss Counts I, II, III, IV, V, VII and VIII of the Amended Complaint. The Court grants defendant District's Motion to Dismiss Count I and dismisses Count I of the Amended Complaint without prejudice for lack of subject matter jurisdiction. The Court denies without prejudice defendant District's Motion to Dismiss Counts II and III of the Amended Complaint to the extent that Counts II and III seek relief that is also available in IDEA administrative proceedings and denies the motion to dismiss those counts in all other respects. The Court denies without prejudice defendant District's Motion to Dismiss Count VII of the Amended Complaint and denies defendant District's Motion to Dismiss Counts IV, V and VIII of the Amended Complaint. Lastly, the Court strikes Paragraph 203 of the Amended Complaint by agreement of the parties.

The Court denies Plaintiffs' Motion for Summary Judgment as to Counts I, II, and VIII of the Amended Complaint.

The Court grants Defendant Gaffney's Motion to Dismiss Count VI without prejudice. The Court grants in part, and denies in part, Defendants Gantz, Smith and Jenkins' Motion to Dismiss Count VI. The Court grants that motion without prejudice to the extent plaintiffs assert claims for violations of the Equal Protection Clause based on race pursuant to 42 U.S.C. § 1983 and denies the motion in all other respects. The Court grants plaintiffs leave to file and serve a

second amended complaint limited to claims asserted in Count VI of the Amended Complaint which were dismissed without prejudice.

## II.    FACTS

The following facts are taken from the Amended Complaint or are matters of public record, and are presented in the light most favorable to plaintiffs.[2]

### A.    Plaintiffs' Allegations

James S. came to the District as a Kindergarten student during the 1995-96 school year, after having previously attended an early intervention program for children with disabilities. (Am. Compl. ¶ 29.)  Plaintiffs allege that the District was aware from the time of James' enrollment that he had a history of developmental delays and significant difficulty in school during his first years as a student.  (Id. ¶ 30.)  In first grade, the District identified James as a student qualified for special services in the area of speech and language.  (Id. ¶ 32.)  Despite receiving these services, James did not progress academically and he was required to repeat first grade during the 1997-98 school year.  (Id. ¶¶ 35-36.)  During the 1997-98 school year, James had trouble focusing or sitting still in school and he experienced difficulties in the classroom. (Id. ¶ 37.)  The District evaluated James at that time, but did not identify a need for support beyond the speech and language therapies he was receiving.  (Id.)

---

[2] Generally, the court may not consider documents outside of the pleadings when ruling on a motion to dismiss.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).  However, a court may consider public documents and prior judicial proceedings without converting a motion to dismiss into one for summary judgment.  In re Rockefeller Ctr. Props. Sec. Litig., 184 F.3d 280, 292-93 (3d Cir. 1999).

In January of 1998, the Philadelphia Department of Health and Human Services ("DHS"), which then had legal custody over James,[3] ordered a private evaluation of James by Dr. Stanley Kurlansik.  (Id. ¶¶ 33, 38.)  Dr. Kurlansik determined that James had a "significant perceptual motor deficit and a diffuse neurological deficit."  (Id. ¶ 38.)  He recommended that the District provide James with special education, comprehensive speech and language, and neurological evaluations.  (Id. ¶ 39.)  The District promoted James to second grade without providing supplemental supports or conducting a reevaluation.  (Id. ¶ 40.)

James demonstrated significant academic and behavioral difficulties during second, third and fourth grades.  (Id. ¶¶ 41-49.)  During those years, Thelma repeatedly discussed James' problems with school personnel and expressed concern with his placement and progress.  (Id. ¶¶ 42-43, 46, 50.)  District personnel told Thelma that James would be fine if he tried harder and paid attention and if he "buckled down."  (Id. ¶¶ 42, 50.)  James was eventually promoted to fifth grade with no specialized services.  (Id. ¶ 52.)

When the District failed to provide special assistance to James as he began fifth grade, Thelma removed James from Tilden Middle School ("Tilden") – a public school in the District – and enrolled him in Jameson Christian Academy.  (Id. ¶ 52.)  In response, and unbeknownst to Thelma, the District unilaterally disenrolled James from special education.  (Id. ¶ 54.)

Thelma removed James from Jameson Christian Academy after sixth grade because of the school's inability to handle James' disabilities.  (Id. ¶ 58.)  She re-enrolled James at Tilden for the start of seventh grade.  (Id. ¶ 58.)  Thelma met with officials at Tilden on several

---

[3] When James began first grade, Thelma was in the process of adopting him.  (Am. Compl. ¶ 29.)  Philadelphia's Department of Health and Human Services had legal custody of James at that time.  (Id.)  The Amended Complaint does not specify when Thelma completed the adoption process.

occasions during James first months in seventh grade.  (Id. ¶ 59.)  The staff documented that James was functioning at a second grade level and disciplined him repeatedly for inappropriate behavior.  (Id. ¶¶ 60, 62.)  James had to be treated by the school nurse twice during his first two months at Tilden due to abuse by his peers.  (Id. ¶ 61.)  He was also suspended eleven times during the 2003-04 school year.  (Id. ¶ 63.)

While James was in seventh grade, defendant Franklin Gantz and Robert Beller, a guidance counselor at Tilden, referred James to truancy court.  (Id. ¶ 65.)  During the same year, Thelma found out that James was used as a "mule" by drug dealers, and she pleaded with Mr. Beller to help James before he found himself in life threatening danger.  (Id. ¶¶ 68-69.)  In response to a meeting with Mr. Beller, Thelma signed a "Permission to Evaluate" and the school began a process of evaluating James.  (Id. ¶¶ 71-72.)  Plaintiffs allege that this evaluation was inadequate because the school failed to follow District protocol or to perform a comprehensive and reliable assessment of James' disabilities.  (Id. ¶¶ 74-79.)

Plaintiffs further allege that the results of tests the school did administer were interpreted in a racially discriminatory manner.  (Id. ¶¶ 77, 79, 81.)  Specifically, plaintiffs aver that Dr. Vivian Price, a District psychologist, concluded that test results indicative of mental retardation in fact reflected "cultural bias" against African-Americans.  (Id. ¶¶ 77, 79, 80-81.)  Plaintiffs allege that but-for the District's racially biased interpretation of James' test results and/or use of "culturally biased" testing measures, James would have received special services for his disabilities.  (Id. ¶¶ 80-81.)

Plaintiffs allege that despite the District's inadequate testing and biased interpretation of the tests it performed, Dr. Price recommended that James receive educational support services for

non-exceptional students.  (Id. ¶ 82.)  However, the District failed to provide these services or the required notice to Thelma of the results of its evaluation of James.  (Id. ¶¶ 82-83.)  Rather, the results of the District's evaluation of James were lost until the following school year, when they were discovered by a new employee cleaning the special education office in the Southwest Region.  (Id. ¶ 83.)

James returned to seventh grade in the fall of 2004.  (Id. ¶ 85.)  He was still performing at a second grade reading level, having made no educational progress the previous year.  (Id.)  Upon returning to seventh grade, James was again referred to defendant Gantz on numerous occasions for discipline and he was also referred to truancy court.  (Id. ¶ 86.)  On October 5, 2004, James was attacked at school and hit in the head with a rock.  (Id. ¶ 87.)  The injury required several days hospitalization, prompting Thelma to call Tilden staff to complain about James' safety and the District's failure to afford him protection.  (Id. ¶¶ 87-88.)  Thelma also withdrew James from Tilden pending the school putting measures in place to assure his safety.  (Id. ¶ 89.)

Three days after Thelma called Tilden staff, the District invited her to a meeting to discuss the results of the evaluation of James conducted the previous spring.  (Id. ¶ 90.)  Plaintiffs allege that evaluation, which determined that James was "non-exceptional," was conducted without Thelma's legally required participation.  (Id. ¶ 91.)  Plaintiffs further allege that at Thelma's meeting with District staff, the District offered inaccurate explanations for James' problems while failing to provide legally-mandated services.  (Id. ¶¶ 92-93.)  Thelma objected to the District's conclusions about James and demanded further evaluation.  (Id. ¶¶ 94-95.)  Although the District agreed at the meeting to conduct a reevaluation, it later failed to do so.  (Id. ¶¶ 96-97.)  It was agreed, however, that James would be transferred from Tilden to Pepper Middle School ("Pepper") effective November 16, 2004.  (Id. ¶ 97.)

Plaintiffs aver that James did not receive proper services at Pepper because staff members at the school were not properly trained and did not understand their child find duties.[4]  (Id. ¶¶ 100-01.)  Specifically, plaintiffs allege that the guidance counselor at Pepper, Genevieve Hamilton, failed to ascertain whether James was in need of a referral to services.  (Id. ¶ 101.) Plaintiffs further allege that the school placed James in a regular seventh grade classroom without any supports despite his history of academic and behavioral problems and his very low test scores.  (Id. ¶¶ 101-02.)

During the school year, Thelma met with Ms. Hamilton to explain that James could not read, that he was socially immature, and that he had no friends.  (Id. ¶ 103.)  Ms. Hamilton replied that "all of these kids have problems" and made other references to the racial composition of Pepper, which was predominantly African-American.  (Id.)  Ms. Hamilton did nothing to facilitate a reevaluation of James.  (Id. ¶ 104.)

In the ensuing months, both Thelma and James' truancy officer, Christine Riddick, sought an evaluation and additional assistance for James.  (Id. ¶¶ 105-06, 108.)  No such assistance was forthcoming and James continued to fail.  (Id. ¶¶ 107, 110.)

James became fearful of attending school because he was frequently attacked by older students, including an incident during which he was threatened on January 12, 2005.  (Id. ¶¶ 111-12.)  In response to that incident, James brought a kitchen knife to school, resulting in

---

[4] A state's "child find" obligation is the statutory duty to "demonstrate that all children residing in [a] State who are disabled, regardless of the severity of their disability, and who are in need of special education and related services are identified, located, and evaluated."  W.B. v. Matula, 67 F.3d 484, 492 (3d Cir. 1995), rev'd on other grounds by A.W. v. Jersey City Pub. Sch. 486 F.3d 791 (3d Cir. 2007) (en banc) (quotation marks and citations omitted); see also 20 U.S.C. § 1412(a)(2); 34 C.F.R. § 300.111(a); (Am. Compl. ¶ 11).

him receiving a ten-day suspension.  (Id. ¶¶ 112-13.)  James was also arrested and taken to a police station for this incident.  (Id. ¶¶ 114-15.)

After James' arrest, the District proceeded with a "Behavior Review" meeting at which it concluded, without Thelma's involvement, that James' conduct did not result from a disability.  (Id. ¶ 116.)  Plaintiffs allege that this decision was made without reference to James' academic records and without the participation of any special education staff.  (Id. ¶¶ 116-17.)  Based on its determination that James' behavior was not a manifestation of a disability, the District informed Thelma that it would be transferring James to a remedial disciplinary school.  (Id. ¶ 119.)

At the insistence of James' truancy officer, the District finally initiated a Comprehensive Student Assistance Process ("CSAP") for James.[5]  (Id. ¶ 120.)  However, James' emotional state continued to deteriorate and his behavior worsened, leading to repeated suspensions and an arrest.  (Id. ¶¶ 121-22.)  James was hospitalized at a psychiatric facility on March 15, 2005, after becoming a danger to himself.  (Id. ¶¶ 122-23.)

In April of 2005, while James was hospitalized, the District attempted to pursue the evaluation that Thelma had requested in October of 2004.  (Id. ¶ 125.)  Thelma denied the District's request to evaluate James because she held the District responsible for his decline.  (Id. ¶ 126.)  Thelma secured counsel when James left the hospital and provided the District with

---

[5] The Comprehensive Student Assistance Process is "a three-tiered, collaborative process by which schools identify and remove barriers to learning by accessing internal (school-based) and external (community-based) resources."  (Am. Compl. ¶ 19.)  It is the process that the District designed to fulfill its child find duties.  (Id.)  It involves, in its three stages, special assistance from the student's teacher, development of an individualized education plan, and, if necessary, an evaluation by the school principal to determine if a change in placement, individualized instruction, or supplemental educational services are necessary.  (Id. ¶¶ 20-22.)

evaluations done while James was hospitalized, which indicated that James was eligible for special education and in need of disability-related services. (Id. ¶ 127.)

Plaintiffs allege that as a result of the District's failure to provide James a FAPE, he has suffered debilitating emotional deterioration, been deprived of an education, and been "arrested, traumatized, and labeled as a juvenile delinquent." (Id. ¶¶ 130-33.) It is plaintiffs' position that the District's actions violated James' rights under the IDEA, Section 504, the ADA, Title VI and the Equal Protection Clause. (Id. ¶ 130.)

### B. Administrative Review

On June 13, 2005, Thelma requested a due process hearing pursuant to the IDEA and Section 504. (Id. ¶ 135.) Thelma sought to challenge the District's failure to classify James as a student with disabilities and to obtain compensatory education for the 1998-99, 1999-00, 2000-01, 2003-04 and 2004-05 school years. (Id.)

A due process hearing was initially scheduled for July 15, 2005. (Id. ¶ 136.) However, the day before the hearing was to take place, the parties reached an agreement whereby the District would classify James as a child with a disability pursuant to Section 504, complete a review of his records, and design an individualized education program ("IEP") for him. (Id.) The parties further agreed to resolve Thelma's compensatory education claims while an IEP was being implemented. (Id.)

In September of 2005, James was again hospitalized in a residential treatment facility. (Id. ¶ 137.) James remained in the facility from that time until the filing of the Amended Complaint on June 14, 2007, with the exception of a few weeks during the fall of 2006. (Id.)

Despite a request from the parties to continue the due process hearing, the officer assigned to the July 16, 2005[6] hearing dismissed the case without prejudice.  (Id. ¶ 138.) Thereafter, on July 21, 2006, Thelma renewed her complaint for compensatory education when it became clear that the parties would not be able to reach a settlement on that issue.  (Id. ¶ 141.) On July 1, 2005, the Individuals with Disabilities Education Improvement Act of 2004 ("IDEIA"), P.L. 108-446, 118 Stat. 2647, took effect.  (Id. ¶ 139.)  Among its provisions, that statute includes a two year statute of limitations for requesting a due process hearing.  20 U.S.C. § 1415(f)(3)(C).

A due process hearing was conducted during the course of eight sessions held from September 15, 2006 through January 17, 2007.  (Id. ¶ 144.)  The hearing officer, William F. Culleton, limited the scope of the hearing, on statute of limitations grounds, to those claims which arose on or after July 21, 2004.  (Id. ¶ 146.)  He permitted Thelma to introduce evidence of earlier events only as needed for background purposes for the 2004-05 claim.  (Id.)

The hearing officer issued his decision on February 4, 2007.  (Id. ¶ 147.)  He determined that the District had violated its IDEA child find obligations and ordered the District to provide compensatory education for the period between July 24, 2004 and March 12, 2005.  (Id.)  The hearing officer denied compensatory education for the period from October 6, 2004 through November 16, 2004, the time during which Thelma kept James home from school for safety reasons.  (Id. ¶ 148.)

_____

[6] In Paragraph 136 of the Amended Complaint, plaintiffs refer to a due process hearing scheduled for July 15, 2005.  Plaintiffs refer to a July 16, 2005 hearing in Paragraph 138.  The exact date of the due process hearing is immaterial for purposes of the Court's decision.

Thelma, through counsel, filed exceptions to the hearing officer's decision.  (Id. ¶ 150.)
Thelma challenged the hearing officer's application of the IDEIA statute of limitations to her pre-
July 24, 2004 compensatory education claims and his failure to order compensatory education for
the period from October 6, 2004 through November 16, 2004.  (Id.)

Under the guidelines of the Office of Dispute Resolution ("ODR"), the Pennsylvania
agency responsible for administering IDEA appeals, Thelma's exceptions had to be filed via
mail, fax or e-mail by 4:00 p.m., ODR's close of business, on the fifteenth calendar day after the
hearing officer's decision.  (Id. ¶ 151; In re re the Educ. Assignment of J.S., A Student in the
School Dist. of Philadelphia, No. 1806-A, at 2 (Pa. Special Educ. Due Process App. Panel March
8, 2007)).  Thelma filed her exceptions at 4:24 p.m., twenty-four minutes after ODR's 4:00 p.m.
deadline, on the fifteenth day after the hearing officer's decision, February 20, 2007.[7]
(Id. ¶¶ 151, 157.)

Plaintiffs aver that Thelma filed the exceptions at 4:24 p.m. based a telephone
conversation between Gina McGinnis, a paralegal in counsel's office, and Lori Shafer, an
employee at ODR, at approximately 3:00 p.m. on February 20, 2007.  (Id. ¶¶ 153, 157.)
Plaintiffs state that Ms. McGinnis was told by Ms. Shafer that the exceptions could be filed until
4:30 p.m., which Ms. McGinnis understood, based on that telephone call, was the time that ODR
closed.  (Id. ¶¶ 153, 155.)  At the commencement of that same telephone call, Ms. McGinnis
obtained information from an electronic telephone recording which advised that a different state
agency housed in the same building as ODR closed at 4:30 p.m.  (Id. ¶ 154.)  Based on this

_____

[7] Paragraph 151 of the Amended Complaint erroneously states that the exceptions were
initially filed on February 23, 2007.  However, the fifteenth calendar day after the hearing
officer's decision was February 20, 2007.

information, Ms. McGinnis concluded, incorrectly as it turned out, that the exceptions were due at 4:30 p.m.  (Id. ¶¶ 154, 156.)

The morning after she filed Thelma's exceptions, counsel sought leave from the Pennsylvania Special Education Due Process Appeals Panel ("Appeals Panel") to file the exceptions nunc pro tunc.  (Id. ¶ 158.)  On February 26, 2007, Appellate Officer Michael J. McElligott notified counsel that the Appeals Panel had denied that request.  (Id. ¶ 160; Pls.' Resp. to Def. Dist.'s Mot. Ex. C at 61.)  The instant suit followed.

## III.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(b)(1)

Defendant District argues that the Court lacks subject matter jurisdiction over plaintiffs' claims in Counts I, II, III and VII of the Amended Complaint.  Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss a complaint for "lack of jurisdiction over the subject matter" of a case.  Plaintiffs have the burden of establishing subject matter jurisdiction.  See Carpet Group Int'l v. Oriental Rug Imp. Ass'n, 227 F.3d 62, 69 (3d Cir. 2000) (citing Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).

"A challenge to a complaint for failure to allege subject matter jurisdiction is known as a 'facial' challenge, and must not be confused with a 'factual' challenge contending that the court in fact lacks subject matter jurisdiction, no matter what the complaint alleges . . . ."  N.E. Hub Partners, L.P. v. CNG Transmission Corp., 239 F.3d 333, 341 n.7 (3d Cir. 2001) (citing Mortensen, 549 F.2d at 891; 5A Wright & Miller, Federal Practice & Procedure § 1350, at 212-18 (West 1990)).  Defendant District's Motion to Dismiss presents a factual challenge.

14

In assessing a Rule 12(b)(1) motion that presents a factual challenge to a court's jurisdiction, the court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case . . . . [N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Carpet Group Int'l, 227 F.3d at 69 (quoting Mortensen, 549 F.2d at 891). In making this assessment, "the court [is] not confined to allegations in the plaintiff's complaint, but [may] consider affidavits, depositions, and testimony to resolve factual issues bearing on jurisdiction." Gotha v. United States, 115 F.3d 176, 179 (3d Cir. 1997).

### B.       Federal Rule of Civil Procedure 12(b)(6)

Defendant District and the individual defendants assert that plaintiffs' remaining claims must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that, in response to a pleading, a defense of "failure to state a claim upon which relief can be granted" may be raised by motion. In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the Court "'accept[s] all factual allegations as true, construe[s] the complaint in the light most favorable to the plaintiff, and determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). "To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level . . . .'" Id. at 232 (quoting Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007)). In other words, a complaint must contain "enough factual matter (taken as true) to suggest" the elements of the claims asserted. Id. at 234 (quoting Twombly, 127 S. Ct. at 1965).

15

C.      **Federal Rule of Civil Procedure 56**

Included in Plaintiffs' Response to Defendant Philadelphia School District's Motion to Dismiss is Plaintiffs' Motion for Summary Judgment as to Counts I, II and VIII of the Amended Complaint.  A court should grant summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A "genuine" issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" when it "might affect the outcome of the suit under the governing law."  Id.  In considering a motion for summary judgment, the "facts must be viewed in the light most favorable to the party opposing summary judgment."  Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990).  The party opposing the motion, however, cannot "rely merely upon bare assertions, conclusory allegations, or suspicions" to support its claim.  Fireman's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982).

**IV.      DISCUSSION**

A.      **Overview of the Individuals with Disabilities Education Act**

"The IDEA is a comprehensive scheme of federal legislation designed to meet the special educational needs of children with disabilities."  M.A. v. State-Operated Sch. Dist. of City of Newark, 344 F.3d 335, 338 (3d Cir. 2003).  Under the IDEA, Congress made funding available to assist states in providing educational services to children with disabilities.  See 20 U.S.C. §§ 1411, 1412(a).  In order to receive such funding, "states [must] meet a number of substantive and procedural criteria" required by Congress.  M.A., 344 F.3d at 338.

Among the requirements imposed on states in exchange for IDEA funding is the obligation to ensure that each student receives a FAPE.  See 20 U.S.C. § 1412(a)(1).  A FAPE "consists of educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the instruction."  W.B. v. Matula, 67 F.3d 484, 491 (3d Cir.1995), rev'd on other grounds by A.W. v. Jersey City Pub. Sch. 486 F.3d 791 (3d Cir. 2007) (en banc) (quoting Bd. of Educ. v. Rowley, 458 U.S. 176, 188-89 (1982)).  To ensure that each child receives a FAPE, states are required to formulate IEPs for students who require specifically designed services to benefit from educational programming.  20 U.S.C. § 1412(a)(4); (Am. Compl. ¶ 11).  Each IEP must take the form of a written statement setting forth, inter alia, the effect of a child's disability, measurable goals and benchmarks, the special educational services to be provided to the child, and the child's progress under the IEP.  See 20 U.S.C. § 1414(d)(1)(A).

States have an affirmative duty to "demonstrate that 'all children residing in [a] State who are disabled, regardless of the severity of their disability, and who are in need of special education and related services are identified, located, and evaluated.'"  W.B., 67 F.3d at 492.  This obligation is known as the "child find" duty.  Id.; 20 U.S.C. § 1412(a)(3); 34 C.F.R. § 300.111(a); (Am. Compl. ¶ 11).

To ensure that local educational agencies comply with the IDEA's substantive provisions, the statute requires states to guarantee certain procedural rights in order to qualify for funding.  Under the IDEA, complaints are reviewed at an "impartial due process hearing" conducted by the state or local education agency.  See 20 U.S.C. § 1415(f); 34 C.F.R. § 300.511.  If a due process hearing is conducted at the local level, an appeal may be taken to a state agency which must

17

render a final decision within thirty days.  See 20 U.S.C. § 1415(g)(1); 34 C.F.R. § 300.515(b).

A party aggrieved by the state educational agency's decision may appeal to a federal or state

court of competent jurisdiction.  See 20 U.S.C. § 1415(i)(2); 34 C.F.R. § 300.516(a).

### B.     Administrative Exhaustion

Defendant District argues that the Court lacks jurisdiction over Counts I, II, III and VII of

the Amended Complaint because of plaintiffs' failure to exhaust administrative remedies.  (Def.

Dist.'s Mot. 4-5.)  Specifically, defendant District contends that Thelma's untimely filing of

exceptions to the hearing officer's decision – and the Appeals Panel's subsequent dismissal of

the exceptions – precludes this Court from reviewing plaintiffs' claims.  The Court will address,

in turn, each count of the Amended Complaint that defendant District challenges on

administrative exhaustion grounds.

#### 1.     Count I

In Count One of the Amended Complaint, plaintiffs seek enforcement of the hearing

officer's award of compensatory education under the IDEA at the rate of five hours for each day

James' middle school was open between July 26, 2004 and October 6, 2004 and between

November 16, 2004 and March 12, 2005.  Defendant District argues that this claim should be

dismissed because plaintiffs failed to exhaust their administrative remedies at the state level.

Although the Court rejects defendant District's argument, it nonetheless dismisses Count I of the

Amended Complaint without prejudice for lack of subject matter jurisdiction.

Neither party addresses the primary issue presented by Count I of the Amended

Complaint: whether a district court has jurisdiction under the IDEA to enforce a hearing officer's

decision.  This question arises because the provision of the IDEA granting federal courts

jurisdiction only permits suit by a "party aggrieved by the findings and decision made" in the administrative process.  20 U.S.C. § 1415(i)(2)(A).  As a matter of logic, a party who obtains the relief requested at a due process hearing is not "aggrieved" by the result of that hearing, even if the opposing party subsequently fails to honor the hearing officer's ruling.  See Brennan v. Reg'l Sch. Dist. No. Bd. of Educ., 531 F. Supp. 2d 245, 261 (D. Conn. 2008) (holding that IDEA does not grant a district court jurisdiction to enforce a hearing officer's order because a party who prevails at a due process hearing is not aggrieved by that decision due to later non-compliance).

Instead of addressing this issue, defendant District contends that because Thelma only prevailed in part at the due process hearing, she was an "aggrieved party" obligated to file a timely appeal with an Appeals Panel before seeking relief in federal court.  (Def. Dist.'s Mot. 4.) In making this argument, defendant District implies that plaintiffs have forfeited the relief they obtained at the due process hearing by failing to file a timely appeal.  In response, plaintiffs argue that Thelma had no obligation to appeal those parts of the hearing officer's decision granting the relief she sought, and that plaintiffs are entitled to summary judgment on this claim based on the hearing officer's award of compensatory education and the subsequent issuance of a certification by the District stating that it had implemented the hearing officer's decision.  (Pl.'s Resp. to Def. Dist.'s Mot. 18-20 & Ex. A.)

Defendant District's argument that a party's failure to appeal the partial denial of a claim renders the hearing officer's grant of relief on the remainder of the claim nugatory is wholly without merit.[8]  A party who prevails in part at a due process hearing has no obligation to appeal

---

[8] The primary case that defendant District relies on in support of its position, Chris D. v. Montgomery County Bd. of Educ., 753 F. Supp. 922 (M.D. Ala. 1990), highlights the error in defendant District's argument.  In that case, the hearing officer granted some, but not all, of the relief the parents had requested.  The parents appealed the hearing officer's decision seeking the relief the officer denied.  Id. at 928.  The school board challenged the court's jurisdiction, arguing

unfavorable aspects of the hearing officer's decision.  20 U.S.C. § 1415(g)(2) provides that a party aggrieved by a hearing officer's decision **may** appeal to a state agency.  There is no implication in the statute that a failure to exercise that option will preclude enforcement of a hearing officer's order.  Thus, the Court rejects defendant District's argument and concludes that Hearing Officer Culleton's order remains valid and binding.

Nonetheless, the fact that the order remains binding does not mean this Court has jurisdiction to enforce the order.  In Jeremy H. v. Mount Lebanon Sch. Dist., 95 F.3d 272, 278 (3d Cir. 1996), the Third Circuit explicitly left open the question of whether the IDEA grants jurisdiction to a district court to enforce a hearing officer's decision.  That Court explained that it did not need to resolve the question, because even if a plaintiff could not enforce a hearing officer's decision directly under the IDEA, it could do so by utilizing 42 U.S.C. § 1983 to enforce rights under the IDEA.  Id.  Since the Jeremy H. decision, courts in the Third Circuit confronted with the problem presented by plaintiffs' Amended Complaint – whether the IDEA provides jurisdiction for enforcing a hearing officer's decision – have exercised jurisdiction pursuant to § 1983.  See, e.g., L.J. v. Audubon Bd. of Educ., No. 06-5350, 2006 WL 3825135, *1 -3  (D.N.J. Dec. 22, 2006); McClendon v. Sch. Dist. of Philadelphia, No. 04-1250, 2004 WL 2440661, *1-2 (E.D. Pa. Oct. 29, 2004).  Unfortunately for plaintiffs, that part of the Jeremy H.

---

that the parents were not "aggrieved parties" because they had obtained some relief at the administrative hearing.  Id.  The district court rejected that argument and held that the parents were aggrieved with respect to the claims the hearing officer denied.  Id. at 928 n.2.  Defendant cites this decision for the proposition that plaintiffs could have appealed the hearing officer's decision to the Appeals Panel.  Yet, that issue is not presented in Count I, because plaintiffs seek relief on the part of the hearing officer's decision favorable to them.  The fact that the Appeals Panel had jurisdiction over plaintiffs' unsuccessful claims does not equate to the Appeals Panel or this Court having jurisdiction over the successful ones, nor does plaintiffs' failure to appeal unsuccessful claims eliminate the relief they otherwise obtained.

decision permitting enforcement of an administrative order via § 1983 was overruled in A.W. v. Jersey City Pub. Sch., 486 F.3d 791 (2007), which held that plaintiffs may not enforce IDEA claims via § 1983.  Since A.W. was decided, no court in the Third Circuit has addressed the question left open in Jeremy H.

In Jeremy H., the Third Circuit included a footnote suggesting arguments for and against allowing enforcement claims under the IDEA.  That court stated:

> The argument against the applicability of [§ 1415(i)(2)][9] would be that the Hunters, in seeking judicial assistance to enforce portions of the IDEA administrative decision, were not persons "aggrieved by the findings and decision" within the meaning of [§ 1415(i)(2)], but rather persons aggrieved by the failure of the local school officials to implement the decision. The counter-argument would be that the Hunters were "aggrieved" by the fact that the administrative orders favorable to the Hunters contained no enforcement mechanisms.

95 F.3d at 278 n.10.

Without deciding whether, in some cases, § 1415(i)(2) might grant a federal court jurisdiction to enforce a hearing officer's order, the Court concludes that under the facts alleged in the Amended Complaint this Court is without such jurisdiction.  That it so because plaintiffs have failed to allege sufficient facts for the Court to conclude that they are "part[ies] aggrieved by" either the hearing officer's decision (to the extent it granted compensatory education) or the District's subsequent conduct.  Plaintiffs have alleged that defendant District "has failed to provide assurance that it will carry out the order of the Hearing Officer."  (Am. Compl. ¶ 166.) This assertion is purely speculative, in that it fails to allege that defendant District has in fact failed to comply with the hearing officer's order.  To the contrary, defendant District submitted a

---

[9] The Jeremy H. court refers to 20 U.S.C. § 1415(e)(2).  That provision of the IDEA is now codified at 20 U.S.C. § 1415(i)(2).

certification stating that it had implemented the order.  (Pl.'s Resp. to Def. Dist.'s Mot. Ex. A.)

While plaintiffs rely on this document in seeking summary judgment, they ignore that it

undermines the proposition that they are "aggrieved."  Thus, because the Court lacks jurisdiction

to enforce the hearing officer's order under the IDEA – and because § 1983 is no longer available

as a remedy for IDEA violations – the Court grants defendant District's Motion to Dismiss Count

I of the Amended Complaint without prejudice.

### 2.     Count VII

In Count VII of the Amended Complaint, plaintiffs appeal from the hearing officer's

ruling denying compensatory education for the 1998-99, 1999-00, 2000-01 and 2003-04 school

years and for part of the 2004-05 school year.[10]  Defendant District argues that the Court lacks

jurisdiction to entertain this appeal because of plaintiffs' failure to exhaust administrative

remedies.  Defendant District's position is based on the Appeals Panel's dismissal of plaintiffs'

exceptions as untimely.

The IDEA requires that a party exhaust administrative procedures before seeking relief in

federal court.  See 20 U.S.C. § 1415(i)(2); Honig v. Doe, 484 U.S. 305, 326-27 (1988)

("[J]udicial review is normally not available under [§ 1415(i)(2)] until all administrative

proceedings are completed . . . .").  In Pennsylvania, exhausting administrative remedies consists

of participating in a due process hearing and taking an appeal to the state appellate body.  See 22

Pa. Code § 14.162; Blunt v. Lower Merion Sch. Dist., No. 07-3100, 2008 WL 442109, *5 (E.D.

Pa. February 15, 2008) (describing two-level review process in Pennsylvania); Kristi H. v.

---

[10] Because the Court's disposition of defendant District's Motion to Dismiss Counts II
and III of the Amended Complaint depends in part on the Court's ruling on Count VII, the Court
addresses Count VII before addressing Counts II and III.

Tri-Valley Sch. Dist., 107 F. Supp. 2d 628, 631 (M.D. Pa. 2000) (same).  Further, before

bringing suit under Section 504 or the ADA "seeking relief that is also available under the

IDEA," a party must exhaust administrative remedies to the same extent as required under the

IDEA.  See 20 U.S.C. § 1415(l); 34 C.F.R. § 300.516(e).  The IDEA administrative exhaustion

requirement "allows a school district to bring its expertise to bear and affords the state an

opportunity to correct its own mistakes."  McKellar v. Com. of Pennsylvania Dept. of Educ., No.

98-4161, 1999 WL 124381, *2 (E.D. Pa. Feb. 23, 1999) (citing McKart v. United States, 395

U.S. 185, 193-95 (1969)).

 The Third Circuit has recognized exceptions to the IDEA's exhaustion requirement which

plaintiffs argue are applicable in this case.  Specifically, the Third Circuit has held that

exhaustion may be excused where: (1) it "would be futile or inadequate"; (2) the "issue presented

is purely a legal question"; (3) "the administrative agency cannot grant relief (e.g., hearing officer

lacks authority to provide a remedy)"; or (4) "exhaustion would work severe or irreparable harm

upon a litigant."  Komninos v. Upper Saddle River Bd. of Educ., 13 F.3d 775, 778 (3d Cir. 1994)

(quotation marks and citations omitted).

 As a threshold matter, plaintiffs argue that the IDEA exhaustion requirement is not

jurisdictional.  (Pls.' Resp. to Def. Dist.'s Mot. 25.)  The Court disagrees.  In W.B., the Third

Circuit stated that a challenge to an IDEA complaint on exhaustion grounds is "jurisdictional in

nature."  67 F.3d at 491.  In Komninos, the Third Circuit noted that Rule 12(b)(1) is the

mechanism for challenging an IDEA claim on exhaustion grounds.  13 F.3d at 778; see also

Blunt, 2008 WL 442109, at *4 (dismissing unexhausted claims for lack of jurisdiction under

Rule 12(b)(1)); Lindsley v. Girard Sch. Dist., 213 F. Supp. 2d 523, 538 (W.D. Pa. 2002) (same).

But see Irene B. v. Philadelphia Acad. Charter Sch., No. 02-1716, 2003 WL 24052009, *5 (E.D. Pa. January 29, 2003) (analyzing exhaustion argument under Rule 12(b)(6)); McCachren v. Blacklick Valley Sch. Dist., 217 F. Supp. 2d 594, 597 (W.D. Pa. 2002) (same).  In light of the Third Circuit's statements in W.B. and Komninos, the Court will address the failure to exhaust IDEA administrative remedies as an issue arising under Rule 12(b)(1).

Plaintiffs argue that the Appeals Panel abused its discretion by denying Thelma's exceptions as untimely because the exceptions were filed on the day they were due and the twenty-four minute delay in filing resulted from "misinformation or confusion caused by the adjudicatory agency."  (Pl.'s Resp. to Def. Dist.'s Mot. 27.)  Plaintiffs' position is based on their allegations that counsel's paralegal, Gina McGinnis, received confusing information about ODR's closing time from a telephone recording and that Ms. McGinnis was explicitly told by an ODR employee that 4:30 p.m. was the filing deadline.  (Id. at 26-27; Am. Compl. 153-56.)  In its reply in opposition to Plaintiffs' Motion for Summary Judgment, defendant District does not directly address this argument, but instead relies on its general position that plaintiffs were required to timely file exceptions by ODR's 4:00 p.m. closing time to preserve their IDEA claims.  (Def.'s Resp. to Pls.' Summ. J. Mot. 2.)

Assessing plaintiffs' argument that the Appeals Panel abused its discretion by dismissing Thelma's exceptions as untimely requires a factual analysis of the circumstances surrounding the untimely filing.  Such an analysis is permitted in addressing a Rule 12(b)(1) motion.  See Carpet Group Int'l, 227 F.3d at 69.

The parties have submitted three exhibits relevant to this issue.  First, defendant District has submitted a document titled "Procedures to Appeal the Decision of the Hearing Officer"

taken from "Pennsylvania's Special Education Dispute Resolution Manual." (Def. Dist.'s Mot. Ex. B.) That document specifies the procedures and deadlines for filing exceptions. Second, plaintiffs have submitted a copy of Thelma's Motion to File Parent's Exceptions Nunc Pro Tunc explaining the reasons for Thelma's untimely filing. (Pl.'s Resp. to Def. Dist.'s Mot. Ex. C at 40-42.) Many of the facts in that document are also alleged in Paragraphs 150-161 of the Amended Complaint. Finally, plaintiffs have submitted an e-mail message dated February 20, 2007, from Ms. McGinnis confirming a conversation with ODR employee Lori Shafer regarding that office's closing time. (Pl.'s Resp. to Def. Dist.'s Mot. Ex. C at 46.) In her response to that e-mail, Ms. Shafer denies telling Ms. McGinnis that ODR closes at 4:30 p.m. (Id.)

Although Rule 12(b)(1) requires a Court to weigh the evidence presented and make factual determinations as to whether it has jurisdiction over a claim, a court may defer ruling on a Rule 12(b)(1) motion pending the introduction of additional evidence where the evidence presented is incomplete and inconclusive. See Johnson v. United States, 147 F.R.D. 91, 94 (E.D. Pa. 1993) (citing Rand v. Monsanto Co., 926 F.2d 596 (7th Cir.1991); Streeter v. Joint Indus. Bd. of Elec. Indus., 767 F. Supp. 520, 525 (S.D.N.Y. 1991)); 5B Wright & Miller, Federal Practice & Procedure § 1350, at 250-51 (West 2004). On the present state of the record, the Court is unable to determine whether or not Ms. McGinnis was in fact told by Ms. Shafer that she had until 4:30 p.m. to file exceptions. Resolving this factual question is necessary to assessing plaintiffs' argument that the Appeals Panel abused its discretion by dismissing Thelma's exceptions as untimely when ODR was responsible for the untimeliness. Because the record before the Court is incomplete and inconclusive, the Court denies defendant District's Motion to Dismiss Count VII without prejudice. The Court will revisit the question of its jurisdiction over Count VII of the Amended Complaint after the completion of relevant discovery.

3.        Counts II and III

a.        Defendant District's Motion to Dismiss

In Count II of the Amended Complaint, plaintiffs allege that defendant District violated

James' rights under Section 504 and the ADA by denying him a FAPE between October 6, 2004

and November 16, 2004.  In Count III of the Amended Complaint, plaintiffs allege that defendant

District's denial of a FAPE to James for the 1998-99, 1999-00, 2000-01 and 2003-04 school

years violated his rights under the IDEA and Section 504.  Defendant District argues that

plaintiffs were required to appeal these claims to the Appeals Panel prior to bringing suit in

federal court because they involve time periods for which the hearing officer denied

compensatory education.  Plaintiffs argue that they were not required to exhaust these claims,

because, unlike claims for compensatory education under the IDEA, claims brought under

Section 504 and the ADA need not be exhausted.  The Court agrees with plaintiffs to the extent

the damages they seek under Section 504 and the ADA are unavailable under the IDEA.

Although compensatory damages are available under Section 504 and the ADA, they are

not available in IDEA administrative proceedings.  See W.B., 67 F.3d at 496;  J.F. v. Sch. Dist.

of Philadelphia, No. 98-1763, 2000 WL 361866, *7 (E.D. Pa. April 7, 2000).  In W.B., the Third

Circuit held that exhaustion was excused where the parties had settled the plaintiffs' IDEA

claims and the only issue remaining for the Court was the availability of damages under § 1983.[11]

67 F.3d at 495-96.  The W.B. court held that the plaintiff was not required to exhaust IDEA's

administrative procedures before seeking damages.  Id. at 496.  That court stated:

---

[11] Although A.W. overruled W.B. with respect to a plaintiff's ability to bring a § 1983 action to enforce the IDEA and Section 504, the A.W. court did not address W.B.'s holding regarding exhaustion, and district courts have continued to rely on that holding.  See Brandon V. v. Chichester Sch. Dist., No. 06-4687, 2007 WL 2155722, *5 (E.D. Pa. July 25, 2007).

> Beginning with the plain language of § 1415[(l)][12] . . . it is apparent that the exhaustion requirement is limited to actions seeking relief 'also available' under IDEA.  We held supra that damages are available in a § 1983 action, but IDEA itself makes no mention of such relief.  Hence by its plain terms § 1415[(l)] does not require exhaustion where the relief sought is unavailable in an administrative proceeding.

The W.B. court further stated that "where the relief sought in a civil action is not available in an IDEA administrative proceeding, recourse to such proceedings would be futile and the exhaustion requirement is excused."  Id.  The W.B. court also offered a second rationale for its decision: the fact that administrative proceedings had taken place, providing the district court with a factual record and satisfying the requirement that a plaintiff "resort in the first instance to administrative hearings so as to develop the factual record and resolve evidentiary disputes concerning, for example, evaluation, classification, and placement."  Id.

Since W.B., numerous district courts in the Third Circuit have held that exhaustion is excused where a plaintiff seeks compensatory damages not available under the IDEA.  See, e.g., Colon v. Colonial Intermediate Unit 20, 443 F. Supp. 2d 659, 668 (M.D. Pa. 2006); Irene B., 2003 WL 24052009, at *7; Hicks v. Purchase Line Sch. Dist., 251 F. Supp. 2d 1250, 1252-53 (W.D. Pa. 2003); Susavage v. Bucks County Sch. Intermediate Unit No. 22, No. 00-6217, 2002 WL 109615, *17-19 (E.D. Pa. Jan. 22, 2002); Kevin M. v. Bristol Twp. Sch. Dist., No. 00-6030, 2002 WL 73233, *5-6 (E.D. Pa. Jan. 16, 2002); McCachren, 217 F. Supp. at 597; Jeffery Y. v. St. Marys Area Sch. Dist., 967 F. Supp. 852, 855 (W.D. Pa. 1997).  This Court is among those which have held that a plaintiff has no obligation to exhaust IDEA remedies before pursuing claims for damages not available under the IDEA.  J.F., 2000 WL 361866, at *7.

---

[12] The W.B. court refers to 20 U.S.C. § 1415(f).  That provision of the IDEA is now codified at 20 U.S.C. § 1415(l).

While other courts have read W.B. as narrowly excusing exhaustion, many of those cases involved situations where the plaintiff had bypassed the administrative process entirely, precluding any administrative determination as to whether the student was disabled and entitled to services under the IDEA and Section 504.  See, e.g., Brandon V. v. Chichester Sch. Dist., No. 06-4687, 2007 WL 2155722, *5-6 (E.D. Pa. July 25, 2007) (dismissing damages claims because child could benefit from administrative process and court would benefit from factual record); M.M. v. Tredyffrin/Easttown Sch. Dist., No. 06-1966, 2006 WL 2561242, *7 (E.D. Pa. Sept.1, 2006) (declining to follow W.B. because plaintiffs sought equitable relief in addition to damages, issues beyond damages required resolution and no factual record had been developed); Blanck v. Exeter Sch. Dist., No. 01-1402, 2002 WL 31247983, *3 (E.D. Pa. Oct. 2, 2002) (dismissing damages claims where factual record was not fully developed, evidentiary disputes remained and child had yet to be classified as disabled); Lindsley, 213 F. Supp. 2d at 534-35 (same).

In this case, plaintiffs do not specify in the Amended Complaint what relief they seek under Section 504 and the ADA.  To the extent that plaintiffs seek compensatory damages for those claims, the Court concludes that exhaustion would have been futile, because the hearing officer had no authority to grant such relief.  Further, the Court notes that, as in W.B., there has been extensive administrative fact-finding in this case and an administrative determination that plaintiff is a student with disabilities.  Accordingly, the Court denies with prejudice defendant District's Motion to Dismiss Counts II and III of the Amended Complaint to the extent that plaintiffs seek damages under Section 504 and the ADA which are not available in IDEA administrative proceedings.

28

In light of the Court's ruling with respect to Count VII of the Amended Complaint, the Court denies without prejudice defendant District's Motion to Dismiss Counts II and III of the Amended Complaint to the extent that plaintiffs seek compensatory education available in IDEA administrative proceedings.  20 U.S.C. § 1415(l) precludes this Court from granting relief under Section 504 or the ADA "that is also available under the IDEA" where a plaintiff has not exhausted IDEA administrative procedures.  The Third Circuit has held that § 1415(l) bars plaintiffs from "circumventing IDEA's exhaustion requirement by taking claims that could have been brought under IDEA and repackaging them as claims under some other statute- e.g., section 1983, section 504 of the Rehabilitation Act, or the ADA." Jeremy H., 95 F.3d at 281.  The Court concludes that § 1415(l) and Jeremy H. would prohibit plaintiffs from seeking IDEA relief through the guise of related statutes if the Court concludes that plaintiffs failed to exhaust their IDEA claims.

The Court denied without prejudice defendant District's Motion to Dismiss Count VII because of an incomplete and inconclusive record.  Thus, as with Count VII, the Court denies without prejudice defendant District's Motion to Dismiss plaintiffs' ADA, Section 504 and IDEA claims in Counts II and III to the extent they seek relief available in IDEA administrative proceedings.[13]  In all other respects the motion is denied as to Counts II and III.

### b.     Plaintiffs' Motion for Summary Judgment as to Count II

Plaintiffs move for summary judgment on Count II of the Amended Complaint, which seeks compensatory education for the period from October 6, 2004 to November 16, 2004 during

---

[13] Plaintiffs argue that their ADA and Section 504 claims should be allowed to proceed in their entirety because unlike claims for denial of a FAPE under the IDEA, the Appeals Panel had no jurisdiction over derivative discrimination claims based on denial of a FAPE under Section 504 or the ADA.  The Court rejects this argument in light of the express language of 20 U.S.C. § 1415(l) and the Third Circuit's ruling in Jeremy H., 95 F.3d at 281.

29

which Thelma kept James home from school for safety reasons.  Plaintiffs contend that summary

judgment is warranted by reason of the conclusion of the hearing officer that James was denied a

FAPE during the 2004-05 school year.  (Pl.'s Resp. to Def. Dist.'s Mot. 23.)  Plaintiffs take the

position that James was denied a FAPE whether or not he went to school or stayed home during

that period.  In response, defendant District argues that plaintiffs are not entitled to relief on

Count II because of Thelma's failure to exhaust administrative remedies.  (Def. Dist.'s Reply 2.)

The Court disagrees with plaintiffs' argument that the issue presented in Count II of the

Amended Complaint is purely legal.  The hearing officer found that the District was "obstructed

or prevented from providing services" during the six week period for which he denied relief.

(Hr'g Officer's Op. 29 & Finding of Fact 30.)  This finding directly conflicts with plaintiffs'

contention that the District was in a position to provide a FAPE during that period.  Thus,

because there is a genuine issue of material fact as to whether the District denied James a FAPE

between October 6, 2004 and November 16, 2004, the Court denies Plaintiffs' Motion for

Summary Judgment as to Count II.

### C.     Count IV

#### 1.     Section 504 Claim

In Count IV of the Amended Complaint, plaintiffs allege discrimination under Section

504 and the ADA.  This Count is unlimited in time and incorporates allegations similar to

plaintiffs' claims in Counts II and III which are limited in time.  Defendant District seeks

dismissal of the Section 504 claim in Count IV for failure to state a claim.  Defendant District

argues that plaintiffs' Section 504 claim fails because "[t]here is no allegation here that

educational services or benefits were intentionally withheld from the minor plaintiff because of

his disability, that he was excluded from any school programs or activities available to all students or that he was treated differently by School District officials because of his disability." (Def. Dist.'s Mot. 8.)  In response, plaintiffs argue that the Amended Complaint adequately pleads the facts necessary to establish the elements of a Section 504 claim.  The Court agrees with plaintiffs.

Section 504 provides, in relevant part, that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."  29 U.S.C. § 794(a).  "In order to establish a violation of § 504 of the Rehabilitation Act, a plaintiff must prove that (1) he is 'disabled' as defined by the Act; (2) he is 'otherwise qualified' to participate in school activities; (3) the school or the board of education receives federal financial assistance; and (4) he was excluded from participation in, denied the benefits of, or subject to discrimination at, the school." Ridgewood Bd. of Educ. v. N.E., 172 F.3d 238, 253 (3d Cir. 1999).  In Molly L. v. Lower Merion Sch. Dist., this Court observed that "[t]he substantive requirements of the Rehabilitation Act in the education context are equivalent to the requirements set forth in the [IDEA]."  194 F. Supp. 2d 422, 426 (2002); see also Ridgewood, 172 F.3d at 253 ("[T]here are few differences, if any, between IDEA's affirmative duty and § 504's negative prohibition."); W.B., 67 F.3d at 492-93 (same).

In its Motion to Dismiss, defendant District does not contest the second and third requirements of Section 504.  Although defendant District does not concede that James is "disabled" for purposes of Section 504, plaintiffs allege throughout the Amended Complaint that

31

James suffers from specific disabilities.  See, e.g., (Am. Compl. ¶¶ 3, 29, 31, 58, 115, 169, 172, 178-79.)  Thus, the Court concludes that plaintiffs have alleged sufficient facts to satisfy the "disability" requirement of a Section 504 claim.

Defendant District argues that even if all other statutory requirements were satisfied, "[t]here is no allegation here that educational services or benefits were intentionally withheld from the minor plaintiff because of his disability . . . ."  (Def. Dist.'s Mot. 8.)  This argument is rejected because plaintiffs "need not establish that there has been an intent to discriminate in order to prevail."  W.B., 67 F.3d at 492 (quoting Nathanson v. Med. Coll. of Pennsylvania, 926 F.2d 1368, 1380 (3d Cir. 1991)); see also Molly L., 194 F. Supp. 2d at 427.

Defendant District also argues that "[t]here is no allegation here . . . that [James] was excluded from any school programs or activities available to all students or that he was treated differently by School District officials because of his disability."  (Def. Dist.'s Mot. 8.)  However, plaintiffs allege in Paragraph 179 of the Amended Complaint that: "The District, under color of law, has discriminated against James on the basis of his disabilities, and deprived him of his right to equal programs and services in . . . violation of his rights under Section 504 and Title II of the ADA."  In support of this claim, plaintiffs allege that the District denied James the most basic benefits of an education.  See, e.g., (Am. Compl. ¶ 35) (James forced to repeat first grade because services provided by the District "were inadequate to meet his educational needs"); (id. ¶ 49) (James failed several academic subjects and subjected to "numerous disciplinary referrals" in fourth grade); (id. ¶ 62) (James failed almost every subject and unable to keep up with his peers academically or socially in seventh grade); (id. ¶¶ 76-78) (District failed to conduct proper evaluations of James to place him in appropriate environment).  The Court concludes that

plaintiffs have sufficiently alleged facts which, if proved, would establish that James "was excluded from participation in, denied the benefits of, or subject to discrimination at, the school." Ridgewood, 172 F.3d at 253.

Finally, defendant District argues that in addition to the four requirements identified by the Third Circuit in Ridgewood, 172 F.3d at 253, plaintiffs must also "show bad faith, or exercise of gross misjudgment or discriminatory animus by the School District in the treatment of the student" in order to survive a motion to dismiss. (Def. Dist.'s Mot. 8.)  In support of this position, defendant District cites Thompson v. Bd. of the Special Sch. Dist. No. 1, 144 F.3d 574 (8th Cir. 1998), a case from the Eighth Circuit.  Defendant District's argument is contrary to the law in the Third Circuit.  See Irene B., 2003 WL 24052009, at *10 (noting that Third Circuit has never applied a "bad faith or gross misjudgment" requirement); O.F. v. Chester Upland Sch. Dist., No. 00-779, 2000 WL 424276, *3 (E.D. Pa. April 19, 2000) (same).  Further, plaintiffs allege a pattern of dereliction of the District's statutory duties spanning the course of many years and occurring despite repeated requests for intervention by Thelma.  On these facts, the Court would not dismiss plaintiffs' Section 504 claim even if the Third Circuit applied the "bad faith or gross misjudgment" standard.

### 2.      ADA Claim

Defendant District contends that plaintiffs' ADA claim fails because "there is no allegation that the minor plaintiff was excluded from any school activities available to all students or that benefits were withheld from him or that he was treated differently by School District officials because of his disability." (Def. Dist.'s Mot. Mot. 9.)  The Court again disagrees with defendant.

33

42 U.S.C. § 12132 provides, in relevant part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  The Third Circuit has held that the ADA "extends the nondiscrimination rule of [Section 504] to services provided by any 'public entity' (without regard to whether the entity is a recipient of federal funds)."  Jeremy H., 95 F.3d at 279.  That court held that "the remedies, procedures, and rights" applicable to Section 504 claims are the same as those under the ADA.  Id.; see also Terance D. v. Sch. Dist. of Philadelphia, --- F. Supp. 2d ---, 2008 WL 399349, *6 (E.D. Pa. Feb. 13, 2008) (applying same analysis to claims under ADA as claims under Section 504); Indiana Area Sch. Dist. v. H.H., 428 F. Supp. 2d 361, 363 n.3 (W.D. Pa. 2006) ("[T]he Third Circuit generally has held that the same analysis under § 504 applies in determining whether a defendant's actions violate the ADA.").  Because the Court has concluded that plaintiffs allege sufficient facts to survive a motion to dismiss under Section 504, it reaches the same conclusion with respect to plaintiffs' ADA claim.  Thus, the Court denies defendant District's Motion to Dismiss Count IV of the Amended Complaint.

**D.    Count V**

In Count V of the Amended Complaint, plaintiffs allege that defendant District discriminated against James on the basis of his race in violation of Title VI.  Defendant District argues that plaintiffs have failed to state a claim because there is no allegation that race was a motivating factor in the District's decisions or that the District treated non-minority children differently than minority children.  (Def. Dist.'s Mot. 10-12.)  The Court disagrees with defendant District.

Section 601 of Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.  The Supreme Court has held that Title VI permits private individuals to bring suit to obtain both injunctive relief and damages.  Alexander v. Sandoval, 532 U.S. 275, 279 (2001).  However, Title VI only provides a remedy for intentional discrimination.  See id. at 280; Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 562 (3d Cir. 2002).

In Paragraph 187 of the Amended Complaint, plaintiffs allege that "[t]he District, under color of law, has discriminated against James on the basis of his race, in violation of Title VI." In support of this allegation, plaintiffs point to three instances in which the District denied James necessary services on account of his race.

First, in Paragraphs 79-81 and 182 of the Amended Complaint, plaintiffs allege that a school psychologist improperly concluded that James' testing scores reflected "a cultural bias" against African-Americans and that "[t]he District deprived James of special education, related services, accommodations and supports on the basis of an evaluation which was interpreted intentionally in a racially biased manner and/or with deliberate indifference to his right to a racially-neutral evaluation process."

Second, plaintiffs allege in Paragraph 92 of the Amended Complaint that when Thelma met with District staff to discuss the determination that James was "non-exceptional," the staff "falsely informed Thelma S. that James' learning problems were due to a 'lack of cultural' exposure as reported on the evaluation documents, rather than the functional impact of a

disability."  Plaintiffs argue that this was evidence of racial bias.  (Pl.'s Resp. to Def. Dist.'s Mot. 33.)

Third, plaintiffs allege in Paragraphs 100-110 of the Amended Complaint that school officials at Pepper failed to evaluate James or to provide him appropriate educational services. Plaintiffs aver that when Thelma met with guidance counselor Genevieve Hamilton at Pepper to seek assistance for James, Ms. Hamilton told Thelma that "all these kids have problems" and "made other references to the racial composition at Pepper, which was predominantly African-American . . . ."  (Am. Compl. ¶ 103); see also (id. ¶ 183) ("[T]he District's failure to pursue Thelma S.'s repeated requests for evaluation and services for her son during the 2004-5 school year was based on racially biased assumptions by District staff based on his race.").

At this stage of the litigation, plaintiffs are entitled to proceed to discovery if the Amended Complaint, "construed in the light most favorable to plaintiff[s]," Phillips, 515 F.3d at 233, contains "enough factual matter (taken as true) to suggest" the elements of the claims asserted, id. at 234 (quoting Twombly, 127 S. Ct. at 1965).  The Court concludes that the Amended Complaint alleges sufficient facts, if proved, to establish that the District intentionally denied James essential services on account of his race.  Thus, the Court denies defendant District's Motion to Dismiss Count V.

### E.      Count VI

In Count VI of the Amended Complaint, plaintiffs seek damages under 42 U.S.C. § 1983 against four school officials in their individual capacities.  Section § 1983 provides, in relevant part, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or

36

immunities secured by the Constitution and laws, shall be liable to the party injured in an action

at law, suit in equity, or other proper proceeding for redress."

To establish a claim under § 1983, a plaintiff must show that "the defendant, acting under

color of state law, deprived him or her of a right secured by the Constitution or the laws of the

United States." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). In this case,

plaintiffs allege that the individual defendants violated James' rights under the Equal Protection

Clause by discriminating against him on the basis of his race and disabilities. To sufficiently

plead a violation of the Equal Protection Clause, plaintiffs must "allege and prove that [James]

received different treatment from other similarly situated individuals or groups." Brown v.

Borough of Mahaffey, Pa., 35 F.3d 846, 850 (3d Cir. 1994) (citing City of Cleburne v. Cleburne

Living Ctr., 473 U.S. 432 (1985)) (other citations omitted); see also Terrance D., 2008 WL

399349, at *6 (reciting standard for Equal Protection Clause claim in case involving

discrimination on the basis of disability).

Many of plaintiffs' allegations implicate the individual defendants in their roles as

supervisors. However, "[a] defendant in a civil rights action must have personal involvement in

the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior."

Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Thus, to establish that the individual

defendants are liable for violating James' rights, plaintiffs must demonstrate either that a

defendant with policymaking authority "with deliberate indifference to the consequences,

established and maintained a policy, practice or custom which directly caused [the] constitutional

harm," A.M. v. Luzerne County Juv. Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (quoting

Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir.1989)), or that a defendant

"participated in violating the plaintiff's rights, directed others to violate them, or, as the person in

37

charge, had knowledge of and acquiesced in his subordinates' violations." Id. (citing Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995)).

Before assessing plaintiffs' claims with respect to each individual defendant, the Court writes to address defendants' argument that plaintiffs' § 1983 claims fail because of the Third Circuit's opinion in A.W., 486 F.3d at 803, 806.  In A.W., the Third Circuit held that a plaintiff may not resort to § 1983 to remedy violations of statutory rights created by the IDEA or Section 504.  Id.  In response to defendants' argument, plaintiffs assert that A.W. is inapplicable to its claims, which are based on constitutional violations.  The Court agrees with plaintiffs.

Although A.W. eliminated resort to § 1983 as a tool for enforcing IDEA and Section 504 claims, the decision did not eliminate the availability of § 1983 as a mechanism for asserting disability claims predicated on constitutional violations.  See A.W., 486 F.3d at 796 ("§ 1415(1) of the IDEA . . . make[s] clear that actions can be maintained under the Constitution . . . notwithstanding the fact that the IDEA also protects these rights."); Blunt, 2008 WL 442109, at *5 (holding that A.W. does not require dismissal of § 1983 claims asserting violations of constitutional rights); K.R. v. Sch. Dist. of Philadelphia, No. 06-2388, 2007 WL 2726236, *3 (E.D. Pa. Sept. 14, 2007) (same).  In this case, plaintiffs' claims against the individual defendants are based on alleged violations of the Equal Protection Clause.  Because plaintiffs' claims are constitutional in nature, and not statutory, the Court rejects defendants' argument that the claims must be dismissed pursuant to A.W.

### 1.    Defendant Franklin Gantz

Franklin Gantz was Principal for Tilden Middle School when James was enrolled at the school during the 2003-04 school year, as well as the beginning of the 2004-05 school year.

Plaintiffs allege, <u>inter alia</u>, that defendant Gantz was "responsible for assuring that students with disabilities were timely identified and provided with appropriate educational programs and services in light of their individual needs, that they had access to educational opportunities which were equal to those the District afforded to typically developing children in the Southwest Region, and without regard to race."  (Am. Compl. ¶ 8.)  Plaintiffs also allege, in numerous paragraphs of the Amended Complaint, that defendant Gantz was personally involved in decisions concerning James during James' time at Tilden.  <u>See, e.g.</u>, (Am. Compl. ¶¶ 59, 61-62, 66, 86.)

### a.      Denial of Equal Protection Based on Race

Plaintiffs allege that defendant Gantz, "acting jointly and severally with the District, discriminated against [James] on the basis of his race . . . ."  (Pls.' Resp. to Def. Dist.'s Mot. 3.) Defendants offer no argument in response to plaintiffs' equal protection claim insofar as plaintiffs allege racial discrimination.  Nonetheless, because defendants generally challenge the sufficiency of plaintiffs' claims with respect to the named defendants, the Court will address whether plaintiffs' allegations are sufficient to state a claim against defendant Gantz for violating the Equal Protection Clause based on race.

Plaintiffs argue that Paragraphs 182-184 of the Amended Complaint establish the factual underpinnings of a racial discrimination claim.  Those paragraphs state:

> 182.    The District deprived James of special education, related services, accommodations and supports on the basis of an evaluation which was interpreted intentionally in a racially biased manner and/or with deliberate indifference to his right to a racially-neutral evaluation process.

> 183.    Moreover, the District's failure to pursue Thelma S.'s repeated requests for evaluation and services for her son during the 2004-5 school year was based on racially biased assumptions by District staff based on his race.

184.    The District knew or should have known that James was denied an appropriate evaluation, specialized instruction and related services, supplemental supports and accommodations on account of his race, but they failed to take any action to protect him from such discrimination, thereby ratifying the discrimination against him and allowing it to deprive him of equal rights.

In support of that claim, plaintiffs also cite Paragraphs 79, 80 and 81 of the Amended Complaint, which set forth allegations concerning the racially discriminatory interpretation of James' test scores.

Significantly, all of the allegations plaintiffs cite in opposition to Defendants' Motion to Dismiss involve general allegations against the "District" or specific allegations against Dr. Vivian Price, the District psychologist who analyzed James' test scores.  Plaintiffs do not allege that defendant Gantz was aware of, or acquiesced in, the racial discrimination alleged in the Amended Complaint.  Similarly, plaintiffs do not allege that defendant Gantz personally "established and maintained a policy, practice or custom which directly caused [the] constitutional harm." A.M., 372 F.3d at 586.  Because individual liability under § 1983 requires "personal involvement in the alleged wrongs," Rode, 845 F.2d at 1207, the Court dismisses without prejudice plaintiffs' Amended Complaint against defendant Gantz alleging a violation of the Equal Protection Clause based on race.

### b.    Denial of Equal Protection Based on Disability

Defendants argue that plaintiffs' equal protection claims based on disability must fail because "if special accommodations for the disabled are to be required, they have to come from positive law and not through the Equal Protection Clause."  (Defs.' Gantz, Smith and Jenkins Mot. 3) (citing Bd. of Trustees of the Univ. of Alabama v. Garrett, 531 U.S. 356, 366-67 (2001)). Plaintiffs argue that notwithstanding the Supreme Court's statement in Garrett, they may still

40

assert a claim for disability discrimination under the Equal Protection Clause.  (Pls.' Resp. to Individual Defs.' Mot. 5-6.)  The Court agrees with plaintiffs.

Plaintiffs argue that "the District and the Defendants' actions, jointly and severally, constituted discrimination against [James] based on his disability."  (Id. at 4.)  In support of this claim, plaintiffs cite, inter alia, the following paragraphs of the Amended Complaint:

> 130.    Defendants, jointly and severally, have deprived James of his right to receive FAPE under the IDEA and discriminated against him in violation of his rights under Section 504, the ADA, Title VI and the Equal Protection Clause due to their failure to proffer an appropriate program and placement for James over the course of many years, beginning, at the very least, when James was in second grade.

> 177.    From the time James entered the District's programs, the District failed to provide him with appropriate educational and related services, accommodations, and supplemental services which he required in order to have equal access to the District's programs and services and to make appropriate developmental and educational progress.

Plaintiffs also allege that the District's actions "pushed James into the juvenile justice system for conduct which was a manifestation of his disabilities, and caused him to regress to the point that he required long-term residential treatment and placement," (Am. Compl. ¶ 178), and that "the District's failure to provide James with equal services, programs, and opportunities was intentional and/or deliberately indifferent to his federally protected rights," (id.).

In addition to these general allegations against the District, plaintiffs cite numerous instances in which defendant Gantz was personally involved in decisions concerning James' education.  For example, plaintiffs allege that defendant Gantz met with Thelma to discuss James' problems (id. ¶ 59), knew that James was "teased, antagonized, and abused by other children at school," (id. ¶ 61), and dealt with James on disciplinary matters (id. ¶¶ 62, 86).

41

In addressing the sufficiency of plaintiffs' claims, the Court is mindful of the Supreme

Court's admonition in Garrett that the requirement of special accommodations for the disabled

must come from positive law.  531 U.S. at 366-67.  The Court also notes that other courts in this

district have relied on Garrett in dismissing equal protection claims in IDEA cases.  E.g., Kevin

M., 2002 WL 73233, at *8; Ronald E. v. Sch. Dist. of Philadelphia Bd. of Educ., No. 05-2535,

2007 WL 4225584, *8-9 (E.D. Pa. Nov. 29, 2007).  Nonetheless, the Court concludes that

plaintiffs' allegations against defendant Gantz are sufficient to survive a motion to dismiss on the

claim that James was denied equal treatment on account of his disability.

The Court bases its decision on the paragraphs of the Amended Complaint which

specifically allege that the District's treatment of James deprived him of equal access to the

education granted to children without disabilities.  The Amended Complaint also avers that

James was disciplined and pushed into the juvenile justice system on account of his disability

and that James was denied a safe environment at both Tilden and Pepper.  See K.R., 2007 WL

2726236, at *3 (denying motion to dismiss equal protection claim and citing allegation that "The

District failed to provide [K.R.] with a school environment as safe as that provided to students

without disabilities, and on account of her disability, [she] was assaulted . . . .").  Further, the

Amended Complaint sets forth numerous instances of defendant Gantz's involvement in James'

education, which if proved, would establish that defendant Gantz "participated in violating the

plaintiff's rights."  A.M., 372 F.3d at 586.  Thus, the Court denies defendant Gantz's Motion to

Dismiss to the extent that plaintiffs assert an equal protection claim based on disability.

## 2.    Defendants Michael Smith and Richard Jenkins

Michael Smith was Principal at the Pepper Middle School, and Richard Jenkins, Assistant

Principal at the Pepper Middle School, when James was enrolled at the school during the 2004-

05 school year.  Plaintiffs allege, inter alia, that defendant Smith was "responsible for assuring that students with disabilities were timely identified and provided with appropriate educational programs and services in light of their individual needs, that they had access to educational opportunities which were equal to those the District afforded to typically developing children in the Southwest Region, and without regard to race."  (Am. Compl. ¶ 9.)  Plaintiffs also aver that defendant Jenkins "served as the disciplinarian at Pepper and had frequent contact with Thelma S. and James during the 2004-5 school year."  (Id. ¶ 10.)  Plaintiffs further allege, in three paragraphs of the Amended Complaint, that defendants Smith and Jenkins were personally involved in decisions concerning James during his time as Pepper.  (Id. ¶¶ 109, 114, 121.)

### a.      Denial of Equal Protection Based on Race

For the same reason that the Court dismisses plaintiffs' claim against defendant Gantz alleging a violation of the Equal Protection Clause on account of race, the Court dismisses plaintiffs' claims against defendants Smith and Jenkins.  As with defendant Gantz, plaintiffs' general allegations against the District in Paragraphs 182-184 of the Amended Complaint are insufficient to survive a motion to dismiss by defendants Smith and Jenkins in their individual capacities, as the allegations make no reference to the role that those defendants played in the District's decisions.  Similarly, plaintiffs' allegations regarding discrimination during the time James spent as a student at Pepper involve comments and actions on the part of Genevieve Hamilton.  See (Am. Compl. ¶¶ 101-09.)  Plaintiffs do not allege in the Amended Complaint that defendants Smith or Jenkins "had knowledge of and acquiesced in [Ms. Hamilton's] violations" or that Ms. Hamilton was acting in accordance with a "policy, practice or custom" established by the defendants in making decisions influenced by racial bias.  A.M., 372 F.3d at 586.  Thus, the

Court dismisses without prejudice the Amended Complaint against defendants Smith and Jenkins insofar as it alleges violations of James' equal protection rights on account of his race.

**b.      Denial of Equal Protection Based on Disability**

The parties arguments on the issue of the denial of equal protection based on disability are the same with respect to defendants Smith and Jenkins as with respect to defendant Gantz. Accordingly, having concluded that plaintiffs' allegations against defendant Gantz are sufficient to survive a motion to dismiss, the Court must decide whether plaintiffs have alleged sufficient facts concerning defendants Smith and Jenkins.

As noted in the Court's analysis of plaintiffs' claim against defendant Gantz, Paragraphs 130 and 177-178 of the Amended Complaint generally allege that James was denied equal access to educational services.  Paragraphs 109, 114 and 121 of the Amended Complaint describe interactions between defendants Smith and Jenkins and James during his time at Pepper. Specifically, defendant Jenkins helped compose a letter to the truancy court concerning James' educational placement (Am. Compl. ¶ 109) and both defendants disciplined James on account of behaviors stemming from his disabilities (id. ¶¶ 114, 121).

The Court concludes that plaintiffs have pled sufficient facts, if proved, to establish that the defendants denied James educational opportunities provided to students without disabilities. Plaintiffs have also pled sufficient facts concerning the unequal punishment of defendant for disability-related conduct.  Thus, the Court denies defendants Smith and Jenkins' Motion to Dismiss to the extent that plaintiffs assert an equal protection claim based on disability.

**3.      Defendant Harry J. Gaffney**

Defendant Harry J. Gaffney was, at all times relevant to this matter, Regional Superintendent for the Southwest Region of the School District of Philadelphia.  Plaintiffs allege,

inter alia, that "Mr. Gaffney was ultimately responsible for assuring that students with disabilities who were eligible for special education, related services, supplemental supports and/or accommodations receive them . . . and were afforded equal educational opportunities as compared to typically developing children in the Southwest Region and without regard to race." (Am. Compl. ¶ 7.)  However, plaintiffs have not alleged that defendant Gaffney participated in, personally directed, or knew about and acquiesced in any violation of James' rights.  Instead, plaintiffs seek to hold defendant Gaffney liable for violations committed by officials of the District operating under his auspices.  This amounts to respondeat superior liability, which cannot be the basis of liability under § 1983.

Plaintiffs' only specific allegation against defendant Gaffney can be found in Paragraph 75 of the Amended Complaint.  That Paragraph states:

> The District's Special Education Director for the Southwest Region, Susan Levy, had created a protocol approved by the Superintendent for the Southwest Region, Harry J. Gaffney, pursuant to which all PTE's ["Permission to Evaluate" forms] were to be directed to the Southwest Regional Special Education Office (Regional Office) for monitoring and follow-up.

In the ensuing paragraph, plaintiffs allege that school officials at Tilden failed to follow this protocol or to send proper notice of Thelma signing a PTE to the Regional Education Office, thereby precluding regional officials from conducting necessary followup.  See (Am. Compl. ¶ 76.)  There is no mention in the Amended Complaint of a role played by defendant Gaffney in James' educational placement.  Further, plaintiffs do not allege that the protocol defendant Gaffney developed suffered from constitutional infirmities; rather, they fault the conduct of Tilden officials for failing to follow that protocol.  As such, the Amended Complaint sets forth insufficient facts to state a claim against defendant Gaffney for violating James' constitutional

45

rights.  Thus, the Court grants the Motion of Defendant Harry J. Gaffney to Dismiss Count VI and dismisses the Amended Complaint against defendant Gaffney without prejudice.

### F.        Count VIII

In Count VIII of the Amended Complaint, plaintiffs assert that counsel is entitled to attorney's fees for litigating the due process hearing at which James was awarded compensatory education.  Plaintiffs seek summary judgment on this count on the ground that Thelma was a prevailing party at the due process hearing.  Defendant District argues that plaintiffs are not entitled to attorney's fees because under the IDEA, a plaintiff may not recover attorney's fees if he or she turned down a settlement equal or greater in value to what was ultimately obtained at a due process hearing.  Defendant District also contests specific portions of plaintiffs' fee request, which defendant District argues are unreasonable or unauthorized under the statute. Accordingly, defendant District argues that plaintiffs' request for attorney's fees should be denied, or, in the alternative, that the Court should deny summary judgment on the ground that there are genuine issues of material fact.  For the reasons that follow, the Court denies defendant District's Motion to Dismiss Count VIII and Plaintiffs' Motion for Summary Judgment as to Count VIII.

#### 1.        Prevailing Party

Under the IDEA, a prevailing party is entitled to seek attorney's fees and costs.  The statute provides, in relevant part that "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party."  20 U.S.C. § 1415(i)(3)(B).

In deciding whether a party seeking fees is a prevailing party, a court must apply a two-prong test: "[f]irst, 'whether plaintiffs achieved relief,' and second, 'whether there is a causal connection between the litigation and the relief from the defendant.'" J.O. v. Orange Tp. Bd. of Educ., 287 F.3d 267, 271 (3d Cir. 2002) (quoting Wheeler v. Towanda Area Sch. Dist., 950 F.2d 128, 131 (3d Cir. 1991)).

To be deemed a prevailing party, a plaintiff need not need not obtain all relief requested, so long as the relief obtained "goes toward achieving the same goal." Id.; see also P.N. v. Clementon Bd. of Educ., 442 F.3d 848, 856 (3d Cir. 2006) (noting that a plaintiff may deemed a prevailing party if the plaintiff succeeds "on a significant issue"). A plaintiff may be deemed a prevailing party, if "at a minimum . . . the plaintiff [is] able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." J.O., 287 F.3d at 271 (quoting Texas Teachers Ass'n v. Garland Sch. Dist., 489 U.S. 782, 792 (1989). "The only clear exception to this 'generous formulation' is where the plaintiff's success is 'purely technical or de minimus.'" Id. (citing Texas Teachers Ass'n, 489 U.S. at 792).

In this case, the relief Thelma sought at the 2006 due process hearing was compensatory education for the 1998-99, 1999-00, 2000-01, 2003-04 and 2004-05 school years.[14] At the conclusion of the hearing, Thelma was awarded compensatory education for James for the 2004-

---

[14] Defendant District argues that Thelma was not a prevailing party at the first due process hearing originally scheduled for July 15, 2005 and later dismissed without prejudice in August of 2005. Plaintiffs argue in response that counsel's fee request only covers preparation for and litigation of the 2006 due process hearing. Because plaintiffs' counsel is not requesting fees for the 2005 due process hearing, the Court need not address the question of whether Thelma "prevailed" at that hearing. To the extent defendant District argues that counsel has included fees related to the 2005 hearing in her time sheets for the 2006 hearing, the Court will address that issue if it rules that counsel is entitled to fees for the 2006 hearing.

05 school year at the rate of five hours per day.  By securing this award of compensatory

education, plaintiff "achieved relief" which bore a "casual connection" to the issues litigated at

the hearing.  See J.O., 287 F.3d at 271.  This relief changed the legal relationship between the

parties, as it encompassed an administrative determination that James was a student with a

disability entitled to compensation from the District for its failure to honor its statutory

obligations.  Although plaintiff did not obtain all relief requested, the hearing officer's award was

not "de minimus or technical."  Thus, the Court concludes that Thelma was a prevailing party at

the 2006 due process hearing for purposes of the IDEA attorney's fee provision.

### 2.        Statutory Prohibition on Awarding Fees in 20 U.S.C. § 1415(i)(3)(D)

Defendant District argues that even if Thelma "prevailed" at the due process hearing,

plaintiffs' fee request should be denied because 20 U.S.C. § 1415(i)(3)(D) precludes a court from

awarding attorney's fees where a plaintiff turns down a settlement offer more favorable than

what is obtained after litigation.  That statute provides, in relevant part:

> Attorneys' fees may not be awarded and related costs may not be reimbursed in any
> action or proceeding under this section for services performed subsequent to the time
> of a written offer of settlement to a parent if–
>
> (I) the offer is made within the time prescribed by Rule 68 of the Federal Rules of
> Civil Procedure or, in the case of an administrative proceeding, at any time more than
> 10 days before the proceeding begins;
>
> (II) the offer is not accepted within 10 days; and
>
> (III) the court or administrative hearing officer finds that the relief finally obtained
> by the parents is not more favorable to the parents than the offer of settlement.

20 U.S.C. § 1415(i)(3)(D).

Defendant District contends that its final settlement offer was greater than what plaintiffs obtained at the due process hearing.  In support of its position, defendant District cites the settlement offer it made in advance of the 2005 due process hearing by letter dated February 13, 2005, from attorney James Tone.  (Def.'s Resp. to Pls.' Summ. J. Mot. 8.)  The District offered the following in its letter: 1) 500 hours of academic tutoring either one-on-one or in a group setting; 2) relinquishment by the District of its ownership of the laptop computer initially loaned to James; 3) payment of up to $1,000 for computer program software, for educational purposes, for James; 4) assignment of a liaison/intermediary to assist in James' transition back to the District from his institutional setting; and 5) twenty (20) hours of speech and language therapy. The District also agreed to review attorney's fees and invoice submissions for reimbursement. (Pls.' Resp. to Def. Dist.'s Mot. Ex. E at 2-3.)  Plaintiff rejected the District's settlement offer by letter dated March 9, 2005.  (Id. at 4-5.)  Thereafter, the District renewed its February 13, 2005 settlement offer by letter dated September 12, 2005, from attorney Anne E. Hendricks.  (Id. at 1.)

As a preliminary matter, the Court notes a dispute in the parties' briefs as to whether counsel did or did not accept defendant District's September 12, 2005 settlement offer.  In their summary judgment motion, plaintiffs argue that counsel attempted, by e-mail message dated September 14, 2005, to accept the settlement offer to the extent that it offered compensation for the 2004-05 school year.  (Pls.' Resp. to Def. Dist.'s Mot. 40 & Ex. E at 6.)  Defendant District contends that plaintiffs' purported acceptance substantively differed from the terms of its offer. (Def.'s Resp. to Pls.' Summ. J. Mot. 8.)  The Court agrees with defendant on this issue.

Counsel's e-mail message dated September 14, 2005 explicitly stated that "we rejected [the District's settlement offer] then and we reject it now."  (Pls.' Resp. to Def. Dist.'s Mot. Ex. E at 6.)  Although the e-mail message did include a limited acceptance of the District's proposal,

49

it drastically altered the terms of what the District offered.  The communication was, at most, a counter-offer; it was not an acceptance of the District's settlement offer, notwithstanding counsel's use of the word "accept" in her message.  Accordingly, the Court concludes that plaintiffs rejected the District's settlement offer for purposes of 20 U.S.C. § 1415(i)(3)(D).

With respect to the question of whether plaintiffs obtained more at the due process hearing than the District offered in settlement, the Court notes that Hearing Officer Culleton awarded compensatory education at the rate of "[f]ive hours per day for every day in which the District's middle schools were in session from July 26, 2004 until October 6, 2004 and from November 16, 2004 until March 12, 2005."  (Hr'g Officer's Op. 31.)  Plaintiffs contend that this award represents 560 total hours of compensatory education, sixty hours more than defendant District offered in settlement.  (Pls.' Resp. to Def. Dist.'s Mot. 42; Pls.' Reply to Def. Dist.'s Resp. 4.)  In support of this calculation, plaintiffs have submitted an affidavit from plaintiffs' counsel stating that James secured 560 hours of compensatory education at the due process hearing.  (Pls.' Resp. to Def. Dist.'s Mot. Ex. E at 7.)  In response, defendant District argues that plaintiffs did not receive more at the due process hearing than what was offered in settlement. (Def. Dist.'s Mot. 8.)  Although defendant District does not provide any evidence in support of this contention, the Court notes that included in the administrative record, is a copy of the Exceptions of the Philadelphia School District filed in response to the hearing officer's ruling.[15] (Admin. R. Ex. 13.)  In that document, the District asserts that the Hearing Officer awarded 475 hours of compensatory education.  (Def.'s Exceptions 5, Admin. R. Ex. 13.)

---

[15] The Court notes that defendant District asked to withdraw its Exceptions without decision by the Appeals Panel in response to the Appeals Panel dismissing Thelma's exceptions as untimely.

In light of the conflicting evidence on this issue, the Court concludes that there is a genuine issue of material fact on the question of whether "the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement." 20 U.S.C. § 1415(i)(3)(D)(III). Accordingly, the Court denies Plaintiffs' Motion for Summary Judgment on the issue of defendant District's liability for attorney's fees. The Court also denies Defendant District's Motion to Dismiss Count VIII of the Amended Complaint.

Plaintiffs argue, in the alternative, that the Court has discretion to award fees even if it concludes that plaintiffs obtained less at the hearing than was offered in settlement. 20 U.S.C. § 1415(i)(3)(E). Section 1415(i)(3)(E), titled "Exception to prohibition on attorneys' fees and related costs," provides that: "[n]otwithstanding subparagraph (D), an award of attorneys' fees and related costs may be made to a parent who is the prevailing party and who was substantially justified in rejecting the settlement offer."

Because there is a genuine issue of material fact as to whether the prohibition in § 1415(i)(3)(D) applies to plaintiffs' attorney's fees claim, the Court declines to reach the secondary question of whether, even if that provision bars plaintiffs' claim, the Court should nonetheless award fees pursuant to § 1415(i)(3)(E).

Further, because the Court denies Plaintiffs' Motion for Summary Judgment on the issue of liability for attorney's fees, it declines to reach the question, briefed extensively by the parties, of whether plaintiffs' fee request is reasonable. The Court will address the reasonableness of plaintiffs' fee request if it determines at a later stage of the proceedings that plaintiffs are entitled to attorney's fees under the IDEA.

G.      **Paragraph 203 of the Amended Complaint**

Defendant District moves to strike Paragraph 203 of the Amended Complaint pursuant to

Federal Rule of Civil Procedure 12(f).  Rule 12(f) provides, in relevant part, that "[t]he court may

strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or

scandalous matter."

Defendant District contends that Paragraph 203 of the Amended Complaint is evidence of

conduct or a statement made in the course of compromise negotiations offered in violation of

Federal Rule of Evidence 408.[16]  Paragraph 203 states:

> 203.    On March 27, 2007 Plaintiffs' counsel asked the District to reimburse her for
> her attorneys' fees and litigation costs. In response, the District has only offered to
> pay Plaintiff's counsel $20,000.00 for their fees and expenses, representing only 57
> hours of the time they spent on the litigation through the date of the Hearing Officer's
> decision, and less than 18% of the lodestar.

Defendant District asks the Court to strike this paragraph as "immaterial and impertinent."

Plaintiffs state, in response, that Paragraph 203 was offered solely to "provide a complete

---

[16] Federal Rule of Evidence 408 provides, in relevant part:

Rule 408. Compromise and Offers to Compromise

(a) Prohibited uses.  Evidence of the following is not admissible on behalf of any
party, when offered to prove liability for, invalidity of, or amount of a claim that was
disputed as to validity or amount, or to impeach through a prior inconsistent
statement or contradiction:

(1) furnishing or offering or promising to furnish or accepting or offering or
promising to accept a valuable consideration in compromising or attempting to
compromise the claim ; and

(2) conduct or statements made in compromise negotiations regarding the claim,
except when offered in a criminal case and the negotiations related to a claim by a
public office or agency in the exercise of regulatory, investigative, or enforcement
authority.

recitation of the procedural history of the fee claim and Plaintiffs' efforts to resolve it," and that "Plaintiffs do not object to Defendant's Motion to Strike."  (Pl.'s Resp. to Def. Dist.'s Mot. 34 n.35.)  In the absence of an objection from plaintiffs, the Court grants defendant District's Rule 12(f) Motion and strikes Paragraph 203 from the Amended Complaint.

### H.    Leave to File Second Amended Complaint

The Court has granted the Motion of Defendant Harry J. Gaffney to Dismiss Count VI of the Amended Complaint and the Motion of Defendants Franklin Gantz, Michael Smith and Richard Jenkins to Dismiss Count VI of the Amended Complaint to the extent that plaintiffs assert claims for violations of the Equal Protection Clause based on race and dismissed those claims without prejudice.  The dismissal of those claims resulted from plaintiffs' failure to allege sufficient facts to state a cause of action under 42 U.S.C. § 1983.  Accordingly, if warranted by the evidence, plaintiffs are granted leave to file and serve a second amended complaint on or before June 24, 2008 limited to claims asserted in Count VI of the Amended Complaint which were dismissed without prejudice.

## V.    CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the Motion of Defendant School District of Philadelphia to Dismiss Amended Complaint and denies Plaintiffs' Motion for Summary Judgment as to Counts I, II, and VIII of the Amended Complaint.  The Court grants defendant District's Motion to Dismiss Count I and dismisses Count I of the Amended Complaint without prejudice for lack of subject matter jurisdiction.  The Court denies without prejudice defendant District's Motion to Dismiss Counts II and III of the Amended Complaint to the extent that Counts II and III seek relief that is also available in IDEA administrative proceedings and denies the motion to dismiss those counts in all other respects.

The Court denies without prejudice defendant District's Motion to Dismiss Count VII of the Amended Complaint and denies defendant District's Motion to Dismiss Counts IV, V and VIII of the Amended Complaint.  Lastly, the Court strikes Paragraph 203 of the Amended Complaint by agreement of the parties.

The Court grants the Motion of Defendant Harry J. Gaffney to Dismiss Count VI without prejudice.  The Court grants the Motion of Defendants Franklin Gantz, Michael Smith and Richard Jenkins to Dismiss Count VI without prejudice to the extent that plaintiffs assert claims for violations of the Equal Protection Clause based on race pursuant to 42 U.S.C. § 1983 and denies the motion in all other respects.  The Court grants plaintiffs leave to file and serve a second amended complaint limited to claims asserted in Count VI of the Amended Complaint which were dismissed without prejudice.

Remaining for adjudication are Counts II, III, IV, V, VII and VIII of the Amended Complaint against defendant District and Count VI of the Amended Complaint against defendants Gantz, Smith and Jenkins to the extent that plaintiffs assert claims for violations of the Equal Protection Clause based on disability pursuant to 42 U.S.C. § 1983.

An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

―――――――――――――――――――――――――

| | | |
|---|---|---|
| **JAMES S., a minor, by THELMA S.** | : | **CIVIL ACTION** |
| **his Mother and Natural Guardian,** | : | |
| **Plaintiffs,** | : | |
| | : | |
| **vs.** | : | **NO.  07-1778** |
| | : | |
| **SCHOOL DISTRICT OF PHILADELPHIA,** | : | |
| **HARRY J. GAFFNEY, Regional** | : | |
| **Superintendent for the Southwest Region** | : | |
| **of the School District of Philadelphia,** | : | |
| **in his individual capacity; FRANKLIN** | : | |
| **GANTZ, Principal for Tilden Middle** | : | |
| **School, in his individual capacity;** | : | |
| **MICHAEL SMITH, Principal for the** | : | |
| **Pepper Middle School, in his individual** | : | |
| **capacity; and RICHARD JENKINS,** | : | |
| **Assistant Principal for the Pepper Middle** | : | |
| **School, in his individual capacity,** | : | |
| **Defendants.** | : | |

―――――――――――――――――――――――――

## O R D E R

AND NOW, this 10th day of June 2008, upon consideration of the Motion of Defendant

School District of Philadelphia to Dismiss Amended Complaint (Document No. 10, filed August

10, 2007); Plaintiffs' Response to Defendant School District's Motion to Dismiss and Plaintiffs'

Motion for Summary Judgment as to Counts I, II, and VIII of the Amended Complaint

(Document No. 16, filed August 24, 2007); Plaintiffs' Appendix to Their Response to the School

District's Motion to Dismiss and in Support of Plaintiffs' Motion for Summary Judgment

(Document No. 18, filed August 28, 2007); Response of Defendant School of Philadelphia in

Opposition to Plaintiff's Motion for Summary Judgment as to Counts I, II and VIII (Document

No. 19, filed September 24, 2007); Plaintiff's Reply to the Response of the Defendant School District of Philadelphia in Opposition to Plaintiff's Motion for Summary Judgment as to Counts I, II, and VIII of the Amended Complaint (Document No. 20, filed October 5, 2007); Defendant School District's Supplemental Memorandum of Law in Support of Defendant's Motion to Dismiss (Document No. 26, filed March 28, 2008); Plaintiffs' Response to Defendants' Supplemental Memorandum of Law (Document No. 27, filed April 1, 2008); Motion of Defendant Harry J. Gaffney to Dismiss Count VI (Document No. 11, filed August 10, 2007); Motion of Defendants Franklin Gantz, Michael Smith and Richard Jenkins to Dismiss Count VI (Document No. 23, filed October 29, 2007); and Plaintiffs' Response to the Individuals [sic] Defendants' Motions to Dismiss Count VI of the Amended Complaint (Document No. 24, filed November 8, 2007), for the reasons set forth in the attached Memorandum, **IT IS ORDERED** as follows:

      1.     The Motion of Defendant School District of Philadelphia to Dismiss Amended Complaint is **GRANTED IN PART** and **DENIED IN PART** as follows:

               a.     The Motion of Defendant School District of Philadelphia to Dismiss Count I of the Amended Complaint is **GRANTED**, and Count I of the Amended Complaint is **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction;

               b.     The Motion of Defendant School District of Philadelphia to Dismiss Counts II and III of the Amended Complaint is **DENIED WITHOUT PREJUDICE** to the extent that those counts seek relief that is also available in Individuals with Disabilities Education Act ("IDEA") administrative proceedings and is **DENIED** in all other respects;

    c.        The Motion of Defendant School District of Philadelphia to Dismiss Count IV of the Amended Complaint is **DENIED**;

    d.        The Motion of Defendant School District of Philadelphia to Dismiss Count V of the Amended Complaint is **DENIED**;

    e.        The Motion of Defendant School District of Philadelphia to Dismiss Count VII of the Amended Complaint is **DENIED WITHOUT PREJUDICE**;

    f.        The Motion of Defendant School District of Philadelphia to Dismiss Count VIII of the Amended Complaint is **DENIED**;

    g.        The Motion of Defendant School District of Philadelphia to Strike Paragraph 203 of the Amended Complaint is **GRANTED** by agreement and Paragraph 203 is **STRICKEN** from the Amended Complaint;

2.        Plaintiffs' Motion for Summary Judgment as to Counts I, II, and VIII of the Amended Complaint is **DENIED**;

3.        The Motion of Defendant Harry J. Gaffney to Dismiss Count VI is **GRANTED** and plaintiffs' Amended Complaint against Defendant Harry J. Gaffney is **DISMISSED WITHOUT PREJUDICE**;

4.        The Motion of Defendants Franklin Gantz, Michael Smith and Richard Jenkins to Dismiss Count VI is **GRANTED IN PART** and **DENIED IN PART** as follows:

    i.        Count VI of the Amended Complaint is **DISMISSED WITHOUT PREJUDICE** to the extent that plaintiffs assert claims for violations of the Equal Protection Clause based on race pursuant to 42 U.S.C. § 1983;

57

      ii.      The Motion of Defendants Franklin Gantz, Michael Smith and Richard Jenkins to Dismiss Count VI is **DENIED** in all other respects.

    **IT IS FURTHER ORDERED** that plaintiffs are granted leave to file and serve a second amended complaint on or before June 24, 2008, limited to the claims asserted in Count VI of the Amended Complaint which were dismissed without prejudice.  One copy of the second amended complaint shall be served on the Court (Chambers, Room 12613) when the original is filed.

**BY THE COURT:**

**/s/   JAN E. DUBOIS, J.**

          **JAN E. DUBOIS, J.**